Graves v. Hall.

RALPH GRAVES v. WARREN D. C. HALL.

Where execution has been issued on a judgment of a Court of record within the year, and subsequent executions regularly from Term to Term thereafter, an action on the judgment is not barred until ten years after the last execution.

Where executions have been regularly issued from Term to Term, the omission of the Clerk to put them in the form of *alias, pluries,* &c., is not important.

As to mere matters of form, for the purpose of sustaining right, that will be considered as done, which ought to have been done.

Where execution has been issued within the year, and subsequent executions regularly from Term to Term thereafter, it is no objection to the diligence thereby manifested, that the executions are returned without a levy " stayed by order of the plaintiff."

Appeal from Brazoria. Action by the appellant against the appellee, commenced on the 25th day of October, 1854, on a judgment of the District Court of Brazoria county, which was rendered on the 27th day of March, 1843. The petition alleged " that the first execution upon said judgment was is-" sued on the 11th of April, 1843; that the second execution " was issued afterwards, to wit: on the 12th of October, 1843; " and that afterwards, to wit: on the 2nd of April, 1844, an-" other execution was issued; and that executions were again " issued on the 24th of September, 1844, and on the 6th of " May, 1845; that since said last mentioned date a number " of executions have been issued, but that no execution has " been issued since the the 16th day of December, A. D. " 1848." The petition further alleged that no part of the judgment had been paid, and contained a prayer for judgment, &c.

The defendant filed a general demurrer; general denial, and plea of the statute of limitations.

A jury was waived; the case submitted to the Court; and judgment for the defendant.

There were a statement of facts and bill of exceptions from which it appeared, that the plaintiff proved his judgment as

alleged, and the first execution thereon, issued on the 11th of April, 1843, returned "stayed by order of the plaintiff's attorney, September 14th, 1843;" that the plaintiff then offered to read in evidence the subsequent executions as alleged in his petition "to the reading of which executions the defend-"ant objected on the ground that five of said executions here-"in before first recited, were originals, and not *alias* and *plu-*"*ries* executions, and that two of said executions herein before "last recited were issued more than one year after the issu-"ance of either of said five preceding executions, which ob-"jection was sustained by the Court," &c. The first of the excluded executions was issued on the 12th of October, 1843, and was returned "Rec'd 12th Oct. 1843, and stayed by order of plaintiff's attorney, 12th March, 1844." The next execution was issued on the 2nd of April, 1844, and returned "Rec'd 2nd April, 1844. Stayed by order of plaintiff's attorney, September 12th, 1844." The next execution was issued on the 24th day of September, 1844, and returned "Re-"ceived 24th September, 1844. (Signed) James Dockrill, "Dep'y Shff. This execution was placed in my hands by "W. McMasters, late Sheriff, too late for me to make a levy "before the Term of the Court. I therefore return it without "levying. March 17, 1845, Jno. W. Brooks, Sheriff." The next execution was tested the 6th May, 1845, and returned "Rec'd 12th May, 1845. No property found in this county."

The dates and returns of the other executions are not important. The Act of the Congress of the Republic, approved January 16th, 1843, provided that the Term of the Court in Brazoria county should commence on the third Mondays in March and September, and continue in session two weeks.

*Wharton & Terry*, for appellant. It is evident from the date of each execution, from the date and amount of the judgment recited in each execution, from the bill of costs annexed to each execution, and from the return of the Sheriff upon each execution, that they were issued upon the same judgment,

and the words "you are commanded as you have been be-
fore," and "you are commanded as you have been often be-
fore," would not make the proof more conclusive.

It is contended then that the omission of the Clerk to insert
the words that designate *alias* and *pluries* executions was a
mere clerical mistake which might have been amended had
the appellee moved to quash any one of the executions. But
in as much as the appellee did not test the validity of the ex-
ecutions before they were returned by the Sheriff, he should
now be denied the right to do so, more especially as the rights
of third persons cannot be affected by this judgment.

*P. McGreal*, for appellee. The only point in the case has
been decided by the Court repeatedly, viz: that an execution
which has been issued more than twelve months after the ren-
dition of the judgment, appearing on its face to be an original
execution, is void. (Bennett and wife v. Gamble, 1 Tex. R.
124; Scott & Rose v. Allen, Id. 524; Fessenden v. Barrett,
9 Tex. R. 420.)

It is not, it is respectfully submtted, that diligence which
the law prescribes, when a party places an execution in the
hands of a Sheriff and "orders him to stay it;" it must ap-
pear that he has endeavored to have it levied upon property,
to have the money collected, or he will be guilty of laches,
and the "last act of legal diligence will be the issuance of
the execution," and not the time of its return "stayed by or-
der of plaintiff."

WHEELER, J. The judgment on which this suit was
brought, was rendered more than ten years before the insti-
tution of the suit. But an execution was taken out within the
year, and others regularly from Term to Term of the Court,
until within less than ten years next before the bringing of the
suit. So that the last act of legal diligence was within time
to prevent the bar of the statute or of the lapse of time, upon
the principle of the case of Fessenden v. Barrett. (9 Tex. R.

475.) But the executions subsequent to the first did not purport to be an *alias*, a *pluries*, &c., and on that ground the Court treated them as nullities and gave judgment for the defendant, on the plea of the statute of limitations. And in support of the judgment we are referred to the cases of Bennett and wife v. Gamble, (1 Tex. R. 124,) and Scott & Rose v. Allen, (Id. 508.) Neither of these cases, as will be seen, enunciates any such principle as that, where executions have been regularly issued in respect of time, and the judgment and executions are before the Court, whereby it may be seen that they were so issued, the clerical omission to give them their proper numerical designation, will warrant their being treated as nullities.

The only principle determined in the first of these cases, which can be supposed to have any application to the present, is the construction or definition given to the "due diligence" required by the Act of 1840, to preserve the lien of the judgment; which was, that executions must be continuously issued from Term to Term, after the return of the first execution, required to be issued within the year, not satisfied; and this principle was reaffirmed in the case of Hall v. McCormick. (7 Tex. R. 269.) The question here presented did not arise and was not considered in the case. If it was supposed, as from the brief of counsel for the appellee there is reason to suppose it was, that the case of Scott & Rose v. Allen is an authority for the judgment of the Court under revision, that case must have been singularly misunderstood. The same irregularity, it is true, which appears upon the face of the executions in this case appeared also there; but it was treated by the Court as the least important of the many irregularities which appeared in the proceedings. In noticing it the Court said it might be urged that " as all the executions " were before the Court, there was sufficient evidence to take " the execution last issued, from the limitation of a year from " the rendition of the judgment; and if no rights were affected, " and it was only a question of lien to be kept up by a conti-

" nuity of executions, we should incline to yield to its influ-
" ence." (1 Tex. R. 515.) But because rights, deemed im-
portant to the defendant, accorded to him by the law then in
force, had been affected, and by the course of proceeding he
had not had the benefit of appraisement and the exposure to
sale of property pointed out by him in satisfaction of the judg-
ment; which were conditions precedent to the right of the
plaintiff to point out the property of the defendant, claimed
under the execution then in question ; it was held that the
right claimed by the plaintiff had not accrued ; and could not
be conferred by the issuance of a third or fourth execution,
unless the prerequisites to the exercise of the right had been
complied with upon the previous executions. There, the ques-
tion was as to the right of the plaintiff to point out property,
without a compliance with the prerequisites of the law.
Here, it is as to the use of the legal diligence necessary to
preserve alive the judgment. And it is perfectly clear that
neither of the cases cited affords a precedent for the judgment
of the Court in this case. And, in so far as the intimation of
opinion by the Court may be considered as authority, the case
of Scott & Rose v. Allen is an authority against it, as is evi-
dent from the extract we have made from the opinion of the
Court.

Though the executions in question were irregular in point
of form, they were not nullities. They might have been
amended; and when the Court has before it that which to
amend by, a mere clerical omission will be considered as
amended; upon the principle, that, as to mere matters of
form, for the purpose of sustaining right, that will be consid-
ered as done which ought to have been done.

We are of opinion that the Court erred in its judgment;
and as a jury was waived and the case submitted to the Court
upon the evidence, which is embodied in the record, the judg-
ment will be reversed, and such judgment here rendered as
the Court below ought to have rendered.

Reversed and re-formed.