S. F. Newby et al. v. H. N. Haltaman et al.

1. Organization of State Government.—The State Government of Texas was organized on February 16, 1846, and until that date the Government and laws of the Republic were in force.

2. Circumstantial evidence of the existence of a deed.— Facts and circumstances independent of a deed, and contemporaneous with its execution, coupled with evidence of possession of the title papers by the grantee, and his acts and declarations in regard to the land conveyed by the deed repeated through a series of years afford presumptive evidence against the fabrication of such testimony and strongly corroborate the genuineness of the deed.

Appeal from Johnson. Tried below before the Hon. Charles Soward.

No brief for appellants.

*A. Bradshaw* for appellees.

Reeves, Associate Justice.—Appellees claim the land described in their petition as heirs at law of Abraham Haltaman, deceased.

They produced and read in evidence on the trial a patent from the Republic of Texas to Isaac Saunders for 1,280 acres of land, bearing date February 11, 1846, and a deed of conveyance from Saunders to Abraham Haltaman dated March 10, 1846.

The heirship of appellees being admitted on the trial, the questions in the case relate to the patent to Saunders and the conveyance from him to Abraham Haltaman, and to appellees' right to recover in this suit by virtue of the patent and the deed.

The defendants in the court below objected to the patent to Saunders on the ground that it was issued and signed by Anson Jones, as President of the Republic of Texas, after the Republic had ceased to exist as an independent sovereignty. In this they are mistaken. The State govern-

ment was not organized until February 16, 1846, and until that time the government and laws of the Republic were in force, to the exclusion of the State government. (Cocke *v.* Calkin & Co., 1 Tex., 542.) The patent was issued five days before the change of government took place.

The validity of the deed from Saunders to Abraham Haltaman was put in issue by the defendants' plea, under oath, charging the deed to be a forgery.

This deed is dated March 10, 1846, and purports to have been executed by Isaac Saunders, or Saundres, in the presence of R. F. Ford and James C. Roseman, as subscribing witnesses, in the county of Cabarrus, in the State of North Carolina, where the parties then resided. The deed describes the land conveyed as being situated in Robertson county, on the head-waters of Cedar Bluff creek, a branch of the Trinity river, following the description found in the patent.

The evidence of the subscribing witness, James C. Roseman, was taken by deposition, to which was attached, as stated, the deed from Saunders to Abraham Haltaman. This witness fully proves the execution of the deed by Saunders. He states that his own signature as a witness to the instrument was genuine, and that Saunders signed or acknowledged it in his presence, and that he signed it as a witness at the request of either Saunders or Haltaman; was not certain which one, but would not have witnessed it unless by request of one of the parties.

Opposed to the evidence of Roseman is that of the witnesses examined by the defendants, also taken by deposition. The object of this evidence was to impeach the character of Roseman for truth and veracity. The witnesses testified that they were acquainted with Roseman's general character for truth and veracity in the community where he lived, and that it was bad, and that they would not believe him on oath.

The defendants relied upon the evidence impeaching the

character of Roseman for truth and veracity to support the plea charging the deed from Saunders to be a forgery.

In support of the genuineness of Saunders' deed, and as circumstances tending to corroborate Roseman, the plaintiffs were permitted to read in evidence the certificate of Mathias E. Manley, judge of the superior courts of law and equity in the State of North Carolina, and which, as stated, was written on the back of the deed from Saunders to Haltaman. They also read for the same purpose Governor Holden's certificate as to Judge Manley's official character. The judge certifies that Roseman proved, under oath duly administered, that Saunders signed, sealed, and delivered this deed as his act and deed for the purposes therein mentioned. The certificate bears date October 31, 1851, and was given under the private seal of the judge, there being no seal of office. It seems that the court held that although the certificate of authentication by the judge and that of the governor were not in due form of law, still the plaintiffs were allowed to read them in evidence as tending to show that the deed from Saunders was not a forgery.

In the same connection and for the same purpose the plaintiffs were permitted to prove by the witnesses that they had seen upon the records of Cabarrus county, North Carolina, a transfer of a certificate issued by B. H. Bee, Secretary of War, from Isaac Saunders to Abraham Haltaman. They also proved the declarations of Haltaman claiming to be the owner of the land in controversy. One witness says that Haltaman told him that he had swapped lands in Davis county, North Carolina, to Isaac Saunders for land in Texas. Another witness, his brother, says he heard Abraham Haltaman say that he got his claim to the land from Isaac Saunders, and that the land lay on one of the three forks of the Trinity river, and that he had a deed for it. The witness Bastion testified that Haltaman, a short time before his death, showed witness a deed for land in Texas, and his recollection was that the deed was for 1,280

acres of land lying on the Trinity river.   This witness had
read the deed, but it was so long ago that he could not re-
member with certainty the description of the land.   There
was further evidence of Haltaman's declarations, in sub-
stance, that he had paid another party to locate a soldier's
claim on the land and to get him a deed for it.   The proof
shows that Haltaman was in possession of the deed at the
time these declarations were made, claiming the land as his
own, and that the claim was continuous up to the time of
his death in 1854.

There was other evidence going to corroborate the tes-
timony of Roseman and to establish the genuineness of the
deed.   Abraham Haltaman was well known in Cabarrus
county, where he resided for many years.   James Cline,
sixty-five years of age, residing in the same county, testi-
fied that he had known him for forty years.   Saunders was
not so well known.   It was proved that he had resided in
the same county about one year, and near Haltaman, and
then left, and the witnesses never saw or heard of him
afterwards.   The only additional fact in regard to Saun-
ders is that he was a very poor man.   There is no proof
that he claimed the land after the deed to Haltaman.
Haltaman moved from Cabarrus county to the State of
Illinois in 1849, and died there in 1854.   The deed wants
only but a few months of being old enough to prove itself,
being now more than twenty-nine years old.

Facts and circumstances independent of the deed and
contemporaneous with its execution, coupled with Halta-
man's possession of the title papers, and his acts and de-
clarations in regard to the land, repeated through a long
series of years, afford presumptive evidence against their
fabrication and strongly corroborate the genuineness of the
deed.   (Mapes and Others v. Leal's Heirs, 27 Tex., 345;
Stroud v. Springfield, 28 Tex., 663.)

The defendants objected to the admission in evidence of
Judge Manley's certificate of the proof of Saunders' deed

by Roseman and the certificate of the Governor of North Carolina as to Manley's official character, and also objected to the North Carolina records as examined and testified to by the witnesses. It is not necessary to decide in the present case whether this evidence should have been admitted or not. The verdict of the jury is supported without it.

Plaintiffs' witnesses were also allowed over defendants' objection to express their opinion, formed by comparison of signatures, that the signature of J. C. Roseman, as witness to the deed from Saunders to Haltaman, and his signature to his deposition, was written by the same person. It is not satisfactorily shown that the witnesses had been examined with a view to ascertain whether they were qualified to testify as experts, but there being sufficient competent evidence to warrant the verdict, it is not necessary to revise the action of the court in this respect, or to examine the rules regulating the admission or rejection of evidence in such cases. (Pridgen v. Hill, 12 Tex., 374.)

The objections to the charge of the court are not tenable. There clearly was no error in charging that Newby's affidavit charging the deed from Saunders to Haltaman to be a forgery was not evidence before the jury, nor is the charge of the court objectionable as shifting the burden of proof from the plaintiffs to the defendants. The court instructed the jury to look to every fact and circumstance in evidence and decide whether the deed is a forgery or a valid instrument. In this there was no error. The charge submitted to the jury the issues of fact presented by the pleadings with substantial correctness, and if it was thought to be defective in failing to inform the jury as to the legal effect of defendant Newby's affidavit, attention should have been called to it and a further charge asked. A verdict must be shown to be wrong to warrant this court in setting it aside. It does not so appear in this case. The real question in the case was as to whether or not the deed pur-

porting to have been executed by Saunders to Haltaman is the act and deed of Saunders. The jury, in effect, say that it is. Finding no error in the judgment, it is affirmed.

AFFIRMED.